(Not for publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | : | |
|---|---|---|
| LOUISIANA COUNSELING AND | : | |
| FAMILY SERVICES, INC., et al., | : | |
| | : | |
| Plaintiffs, | : | Civil No. 06-747 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MAKRYGIALOS, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on motion by Louisiana Counseling and Family Services, Inc. ("LCFS"), Access to All, and Lucille Danford (collectively "Plaintiffs") for default judgment against Makrygialos, LLC ("Makrygialos" or "Defendant"). Plaintiffs' claims, brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:5-1 et seq., arise from Defendant's alleged failure to make its property accessible to the disabled. For the reasons set forth below, the Court will deny Plaintiffs' motion.

I.   BACKGROUND

LCFS is a nonprofit organization with operations in Louisiana and New Jersey. (Am. Compl. ¶ 1.) Its affiliate group Access to All advocates on behalf of the disabled in areas of

public access and employment. (Id. ¶ 2.) Lucille Danford is a disabled resident of Camden, New Jersey, who is a member of Access to All. (Id. ¶ 3.) Plaintiffs filed an initial complaint against Gaetano's Steaks & Subs, Inc.; Taco House, Inc.; George Mylonas; and Franco Celia Men's Hair Artist on February 17, 2006. In that complaint, Plaintiffs allege that the commercial property at 5245 Marlton Pike, Pennsauken, New Jersey—which they believed Mr. Mylonas owned and where Defendants operate businesses—fails to comply with the ADA's and NJLAD's mandates for accessibility. (Compl. ¶¶ 4-8.) The alleged violations include deficiencies in the ramp leading to the building, an insufficient number of handicapped parking spaces and access ramps, inadequate condition of the pavement, and failure to remove architectural barriers. (Id. ¶ 20.) Defendants were served with summonses on or about March 2, 2006.

 Beginning on March 7, 2006, Mr. Mylonas made several attempts to inform Plaintiffs that he did own the property located at 5245 Marlton Pike. (Def.'s Opp'n Exs. A-C.) In each of these communications, Mr. Mylonas requested that Plaintiffs amend their complaint and substitute the actual owner, Makrygialos, for Mr. Mylonas. (Id.) Additionally, in June of 2006, Makrygialos allegedly voluntarily undertook various remedial measures, some of which included installing handicap ramps with railings and repairing all exterior walkways. (Id. ¶ xvi.) These improvements were purportedly documented in photographs and provided to Plaintiffs. (Id.)

 On August 8, 2006, five months after the initial request, Plaintiffs filed an amended complaint and Makrygialos was served shortly thereafter. Also around this time, settlement discussions ensued between Plaintiffs and Makrygialos. (Id. ¶¶ ix, xi, xiii, xiv.) These communications included the exchange of a draft settlement agreement. (Id. ¶¶ ix, xvi, Ex. E.) According to Defendant, the last communication between the parties regarding settlement

2

occurred on August 24, 2006.  (Id. ¶ xiv.)  During that conversation, the parties allegedly discussed the appropriate allocation of costs and fees among the four named defendants.  (Id.)  At that stage, Defendant states that Plaintiffs had yet to identify the fees and costs they would be demanding.  (Id.)  Following that final conversation, Defendant attests that Plaintiffs took no additional affirmative steps toward settlement with it.  (Id. ¶ xv.)

Notably, none of the defendants timely answered Plaintiffs' amended complaint, and on October 2, 2006, the Clerk of the Court entered default as to all of them.  For the next ten months, the only activity in the case was the stipulation of dismissal as to Defendant Taco House.  Finally, on August 12, 2007, Plaintiffs filed a motion for default judgment as to Defendant Gaetano's Steaks & Subs and Makrygialos.[1]  On August 31, Plaintiffs dismissed their counts against Gaetano's Steaks & Subs, leaving the motion for default judgment pending only against Makrygialos.  On September 4, 2007, Makrygialos filed an answer to Plaintiffs' amended complaint of August 8, 2006 as well as an opposition to Plaintiffs' motion for default judgment.  Lastly, on November 16, 2007, Plaintiffs amended their motion for default judgment to reflect Gaetano Steaks & Subs' settlement.

**II.   STANDARD**

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.  <u>Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.</u>, 922 F.2d 168, 177 n.9 (3d Cir.1990) ("When a defendant fails to appear . . . the district court or its clerk is authorized to enter a default judgment based

---

[1] Defendant Franco Celia Men's Hair Artist has not been voluntarily dismissed from the case nor did Plaintiffs ask for default judgment against it.

solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we repeatedly state our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the complaint, the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, et al., 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed.1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Asher, 2006 WL 680533, at *1 (citing Wright, et al., § 2688, at 63). The Court must therefore determine if Plaintiffs have stated a legitimate cause of action.

### III.   DISCUSSION

#### A.   Americans With Disabilities Act

Congress enacted the ADA in 1990 with the purpose of providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). The ADA focuses on discrimination against disabled individuals in three areas: employment, public services, and public accommodations. Plaintiffs here bring suit under Title III, the public accommodations

provisions of the Act. Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Id. § 12182(a). The broad prohibitions of the ADA are implemented by regulations found at 28 C.F.R. part 36, which "require[] places of public accommodation and commercial facilities to be designed, constructed, and altered in compliance with the accessibility standards established by this part." 28 C.F.R. § 36.101. The regulations further provide explicit standards and technical specifications for new construction and modifications to existing structures in the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities ("ADAAG"). 28 C.F.R. pt. 36 app. A.

In order to succeed on a claim under Title III of the ADA, a plaintiff must prove that: (1) he was discriminated against on the basis of disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation; (3) by any person who owns or operates a place of public accommodation. 42 U.S.C. § 12182(a); see also Bowers v. Nat'l Collegiate Athletic Ass'n, 118 F. Supp. 2d 494, 514 (D.N.J. 2000).

### B.   Cause of Action

Before awarding a default judgment, the Court must determine whether the moving party's complaint establishes a legitimate cause of action. DirecTV v. DeCroce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004), rev'd on other grounds sub nom. DIRECTV, Inc. v. Pepe, 431 F.3d 162 (3d Cir. 2005). Accepting Plaintiffs' allegations as true, the Court finds that they do set forth a legitimate cause of action under the ADA.

### i.      Defendant Owns a Place of Public Accommodation

Plaintiffs allege in their amended complaint that Makrygialos owns the property located at 5245 Marlton Pike, Pennsauken, New Jersey.  (Am. Compl. ¶ 4.)  Plaintiffs allege further that 5245 Marlton Pike is a place of public accommodation "containing places of public accommodation such as Franco Celia Men's Hair Artist, Taco House, and Gaetano's Steaks & Subs," and that Title III is the pertinent provision of the ADA.  (Id. ¶¶ 15, 20.)  Therefore, Plaintiffs have alleged facts sufficient to show that Defendant owns a place of public accommodation.

### ii.     Defendant Discriminated on the Basis of Disability

Plaintiffs state that Plaintiff Lucille Danford qualifies as an individual with disabilities under the ADA.  (Id. ¶ 12.)  Ms. Danford and other Access to All members have purportedly visited 5245 Marlton Pike and plan to do so again in the future.  (Id.)  Plaintiffs allege that various structural and architectural features at 5245 Marlton Pike create barriers to the access of disabled individuals to the facility and thus constitute discrimination under the ADA.  (Id. ¶¶ 22-23.)  Plaintiffs specify seven aspects of the premises that they allege are in violation of 28 C.F.R. part 36-36.304 and the ADAAG.  These deficiencies include: unsafe gaps in the ramp on the property; too few disabled parking spaces; failure to mark the pathway leading from the disabled parking spaces to the ramp; a ramp that is too steep; pavement that is not smooth, in good repair, or slip resistant; and the absence of any access ramps to four stores.  (Id. ¶ 20.)

The Court accepts as true Plaintiffs' allegations regarding the structural and architectural conditions on Defendant's property.  Thus, for purposes of this motion, the Court concludes that these structural and architectural conditions contravene the specifications of the Code of Federal

Regulations and the ADAAG.

### C. Emcasco Factors

Prior to entering default judgment, the Court must also consider four factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, (3) whether the defendant's delay was the result of culpable misconduct, and (4) the effectiveness of alternative sanctions. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).

#### i. Plaintiff Will Not be Prejudiced if Default is Not Granted

Plaintiffs will not face any prejudice if default is not granted. Plaintiffs have not demonstrated particular haste in prosecuting their case. They waited nearly eleven months after requesting entry of default from the Clerk of the Court before filing their motion for default judgment. Moreover, Defendant submits that it has already completed repairs and remediation to bring the property into compliance with the ADA and NJLAD. If this is so, the urgency of Plaintiffs' action is reduced if not eliminated. As such, the first factor weighs against entry of default judgment.

#### ii. Defendant Have a Meritorious Defense

Defendant asserts various affirmative defenses in their late-filed answer. Among these, Defendant challenges Plaintiffs' standing and argues Plaintiffs failed to exhaust their administrative remedies. The Court also notes that Plaintiffs' claims may be moot due to Defendant's alleged repairs and remediation.

Mootness is a jurisdictional defect that can be raised at any time by the parties or the court sua sponte. "[A] case is moot when the issues presented are no longer 'live' or the parties

lack a legally cognizable interest in the outcome." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). "Mere voluntary cessation of allegedly illegal conduct does not moot a case; it if did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953)). Nevertheless, voluntary cessation of illegal conduct does render a challenge to that conduct moot where (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000); see also Phillips v. Pa. Higher Educ. Assis. Agency, 657 F.2d 554, 569 (3d Cir.1981). "The burden of demonstrating mootness 'is a heavy one.'" Davis, 440 U.S. at 631 (quoting W.T. Grant, 345 U.S. at 632-33).

Defendant asserts that prior to being served with Plaintiffs' amended complaint, it voluntarily engaged in repairs and remediation. (Def.'s Opp'n ¶ ix.) The sole relief sought by Plaintiffs is injunctive relief, declaratory relief, costs, and fees. If 5245 Marlton Pike was brought into compliance with the ADA before Defendant was made a party to this action, then the issues presented never were "live," and Court cannot provide the relief sought by Plaintiffs. Accordingly, Defendants have at least one meritorious defense, which weighs against default.

### iii.   Defendant's Delay Was Not the Result of Culpable Misconduct

Defendant asserts that it promptly responded to Plaintiffs' initial complaint by informing Plaintiffs several times that they had named the wrong party and by requesting that they amend their complaint to name the proper party, Makrygialos. Defendant claims further that it

8

voluntarily undertook repairs and remediation and engaged in good faith settlement negotiations once Plaintiffs had finally amended their complaint to name it.  Defendant cites these settlement talks as the reason it did not timely file an answer to Plaintiffs' amended complaint.  Defendant argues that Plaintiffs should be equitably estopped from seeking default because it voluntarily withheld from filing an answer in reasonable reliance on the settlement negotiations that had ensued between the parties.  According to Defendant, it was waiting for Plaintiffs to inform it of the costs and fees spent bringing the suit, and Plaintiffs never provided this information.

To establish the elements of equitable estoppel, a party must show (1) a representation or misrepresentation, (2) made with knowledge by the representor that it would induce action, and (3) detrimental reliance on the representation by the claimant.  <u>Barone v. Leukemia Soc'y of Am.</u>, 42 F. Supp. 2d 452, 464 (D.N.J. 1998).  In turn, substantial detrimental reliance is not enough to establish an equitable estoppel claim, rather "only justified and reasonable reliance warrant the application of equitable estoppel."  <u>Gen. Accident Ins. Co. v. N.Y. Marine & Gen. Ins. Co.</u>, 727 A.2d 1050, 1055 (N.J. Super. Ct. App. Div. 1999) (citing <u>Palatine I v. Planning Bd.</u>, 628 A.2d 321, 330 (N.J. 1993)).

Here, while Defendant has not adduced sufficient facts to make out its argument for equitable estoppel, the Court is not persuaded that its conduct was so egregious as to warrant entry of default against it.  Defendant has not demonstrated that Plaintiffs made any specific representation to it or that its reliance on the settlement negotiations was a reasonable basis for not filing an answer sooner than eleven months after Plaintiffs' amended complaint.  Nevertheless, there is no evidence to contradict Defendant's account of the settlement process in which it engaged in good faith negotiations, including making the repairs and remediation

Plaintiffs seek. Furthermore, Defendant has now filed an answer and appears ready and willing to defend Plaintiffs' action.

### iv. Alternative Sanctions Would Be Effective

There is no evidence that monetary sanctions would not be more appropriate than dismissal in this case. Defendant's failure to timely file an answer is its lone transgression; therefore, there is no repeated conduct that might necessitate the harsher penalty of dismissal. Cf. Derzack v. County of Allegheny, Pa., 173 F.R.D. 400, 417 (W.D. Pa. 1996) (finding dismissal warranted where party's repeated misconduct included failure to comply with monetary sanctions).

### D. New Jersey Law Against Discrimination

Plaintiffs allege that in violating the ADA, Defendant also violated the NJLAD. The NJLAD prohibits discrimination against handicapped persons in their enjoyment of public accommodations. The Court finds that the reasons underlying its denial of Plaintiffs' motion as to the ADA claim also apply to the Plaintiffs' NJLAD claim, and Plaintiffs' motion will be denied in its entirety.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment and its amended motion for default judgment are denied. An accompanying order shall issue today.

Dated: 2/27/08         s/ Robert B. Kugler
                       ROBERT B. KUGLER
                       United States District Judge